August 21.
JUDGE CAER.
This seems to me a very plain case. On the 21st of December, 1809, Brown, by written agreement under seal, sold to Street, a tract of land, containing 57 acres, more or *less, in the County of Franklin, bounded by the lands of Hancock, Rives, and Brooks, with a grist mill thereunto belonging ; for which Street was to pay a negro man called Juba, and §200, to be paid on the 1st of January, 1810; Brown being bound to make and maintain a right in fee simple to the land. The negro was delivered immediately; and on the day after the contract, (22d of December, 1809,) Street executed a penal bill for the §200, thus: “I confess myself justly indebted to T. Brown, in the sum of $200, to be paid to the said Brown, &c. on the 1st of January next. Yet the condition of the above is such, that the said Brown is bound to m,ake a right in fee simple, to a certain tract of land in the County of Franklin, bounded by the lands of Hancock, Rives, and Brooks; and should the said Brown make and maintain the said right, the said Street is bound in the penal sum of $400; otherwise, the above obligation to be held void,” &c.
On this penal bill, Brown, in 1812, brought an action of covenant, setting out the bill with its condition, and averring that he had conveyed in fee simple, the said land to the said Defendant, according to the form, tenor and effect, of the said covenant, and charging a breach in the non-payment of the money.
The Defendant pleaded, that the Plaintiff ought not to have and maintain his action, because, by the covenant, he was bound to make him a title to the land before the payment of the $200; and he avers, that the Plaintiff has not made him a title in fee simple to the said tract of land, and this, &c.
The Plaintiff replies, that he ought not to be precluded, &c. because he saith, that he hath made a right and title in fee simple to the Defendant, to the tract of land in the covenant aforesaid, in the declaration mentioned, and this he prays may be en-quired of, &c.
This is the sole issue joined in the cause. The Jury find a general verdict for the Plaintiff for $231; thereby falsifying the plea, and affirming that the Plaintiff had made a *title to the Defendant, to the tract of land which, by the covenant, he had bound himself to convey. Without having this fact expressly proved to them, the Jury could not have found for the Plaintiff; for, the covenant shewed, that this conveyance was a condition precedent to the payment of the $200, and the pleadings rested the whole case upon that point, the Plaintiff taking the affirmative, that he had made the fee simple title. This judgment stands unimpeached. No exception, no motion for a new trial, no appeal. But a Bill of Injunction is filed to stay the judgment, and in effect to re-lry the issue in Equity; and this, without stating any surprise in the trial at Law, any defect of evidence, any fraud, or making any appeal to the conscience of the Defendant for a discovery.
This brief statement is sufficient to shew, that Equity has nothing to do with the case. I shall not, therefore, trouble myself with the evidence taken on the Injunction, further than to say, that I think my brother Green’s view of it is a very correct one.
The Decree of the Chancellor must be reversed, and that of the County Court affirmed.
JUDGE GREEN.
Street, on the 21st December, 1809, purchased a mill and tract of land adjoining, as containing 57 acres; for which he was to pay a negro man who was immediately delivered to Brown, at the price of $500, and $200 on the first of January, 1810. Articles of agreement, to this effect, were executed by the parties on the day the contract was made. The land was described as bounded by the lands of Hancock, Rives, and Brooks ; and Brown covenanted to make and maintain a right in fee simple to the land, which was described as containing 57 acres, more or less. Street, on the 22d of December, 1809, gave to Brown an obligation to pay the $200 on the 1st of January, then next, provided Brown should make and maintain to Street *a right in fee simple to a certain tract of land, bounded by the lands of Hancock, Rives, *594 and Brooks, lwithout naming any quantity,) to which Brown was already bound to make and maintain a title in fee simple.
In , April, 1812, Brown instituted an action of covenant on this obligation against Street, and averred that he had conveyed the land according to the agreement; and issue was taken upon this single point, and found for the Plaintiff; who thereupon had judgment for the $200 and interest.
The Defendant, Street, thereupon filed his bill to injoin the judgment at law, stating, that upon a survey, the land represented in the contract as 57 acres, turned out to be only 40 or 41 acres; and that he claimed a proportionable abatement, which the said Brown refused to allow, pretending that he had conveyed to Street the full quantity which hoe had agreed to sell; and the Complainant, whilst he admits the fact, that such a conveyance had been made, alleges that it embraces 20 acres or more, which did not belong to the tract he purchased, but were a part of the lands of William Brooks, which he never meant or wished to purchase, and which is of inferior value.
The Defendant, by his answer, stated that he had sold 60 acres of land, instead of 57, as mentioned in the contract: that the boundaries were known and agreed upon by the parties; and that it was agreed, that if the agreed boundaries did not contain 60 acres, the deficiency was to be made up out of the adjoining land, which he had purchased from William Brooks; and refers to the deed to him recorded, which included all the land conveyed to the Plaintiff, and that he had conveyed the 60 acres to the Plaintiff.
. It is hardly possible, from the pleadings and proofs in the cause, to ascertain clearly the circumstances of the transactions involved in this suit. It seems, however, that Benjamin Brooks, the father of William Brooks, held one acre of land, on which there was a mill; and. that the legal title remained in Hancock, who held all the adjoining "land. B. Brooks afterwards purchased of Hancock the land adjoining the mill, by metes and bounds, supposed to contain 57 acres. B. Brooks had the land surveyed, and represented to Hancock that it contained only 31 acres; whereupon, Hancock sold or laid off to him by metes and bounds, 26 acres of the adjoining land. The first sale now turns out by survey, to be 40 or 41 acres. All these lands, including the acre upon which the mill stood, were afterwards con.veyed by Hancock to William Brooks, at fhe request of B. Brooks; so that Brooks held in the whole, in reality, 67 acres, in the mill tract. Afterwards, W. Brooks sold the mill with 60 acres of land to Brown (called 57 in the contract between Brown and Street;) but before any conve3'ance was made, Brown sold to Street. The witness, who wrote the agreement, says he understood the sale to be of the 60 acres purchased by Brown, of Brooks; and that it was supposed to be 60 acres that were sold by Hancock to B. Brooks; although, in the writing, he put it at 57 acres. The Plaintiff contends that he only purchased the 40 acres, which was the first purchase by Brooks from Hancock; that he-was not bound to take any beyond the lines of that purchase, out of - Brooks’ second purchase from Hancock, that being Brooks’ land, which he did not wish or intend to purchase.
The Defendant contends, that his purchase from Brooks was of sixty acres, out of all he got from Hancock, (which Brooks admits:) that his sale to Street was of the land he had purchased of Brooks; and that the second purchase of Brooks from Hancock, was no more Brooks’ land when he sold to Street, than the mill and the first purchase* the legal title to the whole still being in Brooks; and that Brooks has conveyed to him, and he to Street, according to their respective contracts.
The Defendant’s representation seems to be true. The call to be bounded in part by Brooks’ land, refers to the seven acres reserved by Brooks out of the 67 acres he held; which' is all, so far as appears, that he held in that neighbourhood. *It is proved, that Street, after the contract, said that he was to take the difference between the quantity in the first purchase from Hancock, and the 60 acres out of the adjoining land, the second purchase from Hancock. This is proved by Brooks, Hancock, and the two Kemps. The real dispute was with Brooks, as to what particular part of his second purchase should be laid off for Brown and Street, claiming under him.
Whatever m'ight be the merits of this dispute, it seems to have been settled by the giving of a deed, according to Brooks’ survey, by Brown, and its acceptance by Street. That deed is in the record. There is no -witness to it, and it is recorded upon the acknowledgment of Brown ; and I think the probability is, that it was made and recorded, without the consent of Street. However this may be, it can have no influence in the actual state of the pleadings and proofs. Street does not allege, or pretend to prove, this fact; and the issue tried in the suit at Daw, which was found 'against Street,, directly involved this question. If this deed had not been proved to have been accepted by Street, the Jury could not have found that Brown had performed the condition precedent, by conveying according to his contract. It is true, if the contract was only to convey the first purchase from Hancock, by Brooks, this conveyance would have been, if accepted, a performance of the contract, although it conveyed other lands also. But, in that case, it could not be right to allow Street a credit for the deficiency, whilst he held the title to the excess conveyed to him, as is the effect of the Decree. But, in truth, the land conveyed, was according to the contract, so far as it includes a part of the two purchases from Hancock. The only description of the land, in the contract, is, 57 acres, more or less, adjoining Hancock’s, Brooks’, and Rives’ lands. It does not refer to any particular boundaries, nor to any general description, as a particular purchase made by Brown, of any other: or by Brooks, of any other. To identify the land sold, it was indispensably necessary *595 *to resort to parol evidence. It was a case of latent ambiguity.
As to the question, how the additional 'land was to be laid off, if Street intended •to contest that, he should have refused to accept the conveyance; and his acceptance of the deed, precludes any enquiry into that subject; no fraud or mistake being alleged. The acknowledgment of a deficiency of 17 acres, has no effect. It was only an .acknowledgment that 17 acres were conveyed, over and above the quantity of the •original purchase by Brooks from Hancock.
The land, (I mean the whole tract conveyed to Street,) was" intrinsically of little value. One of the witnesses values it at $1 per acre; another, at $2; and the additional land is valued by a witness, at 70 cents. The difference between laying off the 17 or .20 acres, in the way Brooks insisted on, and in the way Street claimed, could not amount, in value, to more than $5 or $10. 'The real value of the purchase consisted in the mill.
Upon the whole, I think the Decree of the Chancery Court should be reversed, and ■that of the County Court affirmed.
JUDGE) CABEBB concurred, and a Decree entered accordingly.*